James L. VROON, legal guardian of Robert L. Vroon, incompetent, Appellant,

v.

Thomas T. TEMPLIN and Raymond H. Knapp, individually and trading as All State Trailer Transport Company, Appellees.

No. 8021.

United States Court of Appeals Fourth Circuit.

Argued Jan. 20, 1960.

Decided April 20, 1960.

L. David Lindauer, Portsmouth, Va. (Bangel, Bangel & Bangel, Portsmouth, Va., on brief), for appellant.

E. Page Preston, Norfolk, Va. (Preston & Preston, and Worthington, White & Harper, Norfolk, Va., on brief), for appellees.

Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and PAUL, District Judge.

JOHN PAUL, District Judge.

James L. Vroon, as guardian of his son, Robert L. Vroon, instituted this action in the District Court against Thomas T. Templin and Raymond H. Knapp, trading as All State Trailer Transport Company. The complaint alleges that Robert L. Vroon, as a result of the negligent acts of the defendants, had suffered injuries which rendered him mentally incompetent and that James L. Vroon had duly qualified as guardian of Robert in the State of Michigan, of which state both are residents. The defendants are residents of Virginia and jurisdiction is alleged on the ground of diversity of citizenship. The parties will be referred to as plaintiff and defendants, the positions they occupied in the District Court.

The defendants filed a motion to dismiss the action "because as appears from the face of the complaint the plaintiff is a guardian who is a non-resident of the State of Virginia and is without capacity to maintain this action." The District Court sustained the motion and from its order dismissing the action the plaintiff has appealed.

The motion to dismiss was grounded on Sect. 26–59 of the Code of Virginia of 1950 as amended and the action of the District Judge was based on his interpretation of that section. The text of the statute, so far as material, is set out and discussed hereinafter.

In his memorandum dismissing the action the District Judge stated the question before him in these words:

"The single issue presented by defendants' motion to dismiss is the right of a non-resident legal guardian for an incompetent to institute a tort action in the federal court against Virginia defendants where jurisdiction is based solely on diversity of citizenship and no resident guardian has qualified in Virginia."

In resisting the motion to dismiss the plaintiff urged (1) that his right to maintain the action was determined by the provisions of Rule 17 of the Federal Rules of Civil Procedure, particularly paragraph (c) of the rule, 28 U.S.C.A., and that this right was not controlled by state law; and (2) that even if his right to sue was governed by state law the statute in question did not forbid him to maintain the suit.

The District Court ruled against both of these contentions. It held that under

Rule 17 the capacity of one acting in a representative capacity to sue in a federal court was controlled by the law of the state wherein the suit was brought. And it further held that under the Virginia law (Sect. 26–59) the plaintiff, being a non-resident, was required to have a resident of the state qualify along with him as co-guardian before he could maintain the action. The appellant urges that the District Court erred in the construction of both Rule 17 and of the state statute.

It may be said that Rule 17 is lacking in complete clarity. The view held by the lower court in this case was that in any case where the plaintiff is acting in a representative capacity, his capacity to sue is, by the provisions of Rule 17(b), to be determined by the law of the state where the action is instituted. This view has been voiced in a number of decided cases and by various text writers. On the other hand it has been questioned by persons who point out that the representative capacities enumerated in paragraph (a) of the rule are not the same as those named in paragraph (c) and who urge that paragraph (b) applies only to the first, while those representatives named in paragraph (c) are under no restriction of state law. See dictum of Judge Biggs in Fallat v. Gouran, 3 Cir., 220 F.2d 325 at page 328.

However, in our view of this case we find it unnecessary to construe the provisions of Rule 17, for the reason that we are of opinion that the District Court erred in holding that the right of the plaintiff to sue in Virginia was determined by Sect. 26–59. As we construe the statute it does not deny the right of a foreign guardian to bring suit in Virginia in his own name and alone. If the right is to be denied the authority for its denial must be found elsewhere in Virginia law. And this aspect of the case was not considered in the District Court.

Inasmuch as the District Court based its holding on its construction of Sect. 26–59, as amended in 1950, an examination of that section and of its effect is required.

Prior to 1950 the provisions of the section pertinent to this case were as follows:

"No person not a resident of this State * * * shall be appointed or allowed to qualify as personal representative of any decedent, or appointed as guardian of an infant or committee of any person non compos mentis, unless there also be appointed to serve with the non-resident personal representative, guardian or committee, a person resident in this State * * *."

As amended in 1950 the section, so far as pertinent, now reads:

"No person not a resident of this State * * * shall be appointed or allowed to qualify *or act* as personal representative * * * of any decedent, or appointed as guardian of an infant or committee of any person non compos mentis, unless there be also appointed to serve with the non-resident personal representative, * * * guardian or committee, a person resident in this State * * *." (Emphasis has been supplied to the words "or act" which represent the 1950 amendment.

It is to be noted that the statute, as it stood prior to 1950, did not in terms forbid a non-resident fiduciary from bringing suit in Virginia. What it did forbid was the appointment or qualification of such non-resident in Virginia except in association with a co-fiduciary who was a resident.

The federal courts in Virginia, prior to 1950, had occasion in several cases to consider the statute as then written and as related to non-resident administrators who had instituted actions for wrongful death. See La May v. Maddox, D.C.W.D. Va., 68 F.Supp. 25, decided by Judge Barksdale in 1946; Reed v. Shilcutt, D.C.E.D.Va., 119 F.Supp. 652, decided by Judge Pollard in 1946. In both of these cases the courts upheld the right of an administrator appointed and qualified in

a foreign state to sue in Virginia without associating a resident administrator.

The holdings in La May v. Maddox and Reed v. Shilcutt, cited above were supported by implication by the decision of this court in Rybolt v. Jarrett, 4 Cir., 112 F.2d 642, 645 (decided in 1940). In that case an administrator appointed in Indiana brought suit in the federal court in West Virginia. He found himself faced with a West Virginia statute which provided that "no person not a resident of this State shall be appointed *or act* as executor, administrator." etc. (Emphasis supplied) This court, affirming the lower court, held that since the statute forbid a non-resident "to act" as administrator dismissal of the action was required. But in the opinion by Judge Dobie (at page 644) it is stated that if it were not for this statute "we should be inclined to follow the modern liberal doctrine and to hold in the instant case that the action in question could be maintained in the United States District Court for the Southern District of West Virginia by an administrator duly appointed by a proper court of Indiana."

These cases do not deny nor is it questioned that Virginia has generally adhered to the common law ruling that a foreign administrator who has acquired no status in the state is without authority to institute in his official capacity any suit in the courts of the state. See Fugate v. Moore, 86 Va. 1045, 11 S.E. 1063; Moore v. Smith, 177 Va. 621, 15 S.E.2d 48; McDaniel v. North Carolina Pulp Co., 198 Va. 612, 615, 95 S.E.2d 201.

The effect of La May v. Maddox; Reed v. Shilcutt, and the dictum in Rybolt v. Jarrett was to hold that the common law bar against a foreign administrator suing in Virginia was not to be applied— at least in the federal courts—to one whose sole activity was the bringing of an action for wrongful death. And, as each of the cases points out, this exception to the general rule of the state was based upon the special status and limited powers of a personal representative in such actions.

However, so far as the then statute (Sect. 26–59) was concerned the effect of these cases was to hold that it offered no bar to their maintenance and that the requirement for the association of resident representatives related only to the case of non-residents who sought to qualify in Virginia and not to those who had qualified in another state and come into Virginia to sue.

Following the amendment of 1950 this court had occasion to consider its effect in the case of Holt v. Middlebrook, 4 Cir., 214 F.2d 187, 52 A.L.R.2d 1043, which also was an action for wrongful death. It was there held that when the Legislature forbid a non-resident "to act" as personal representative in Virginia the result was to prohibit him from instituting a suit in that state, and that the purpose of the amendment was to bar such actions as La May v. Maddox and Reed v. Shilcutt.

However, as can be seen from comparing the language of the statute prior to and following the amendment, the amendment of 1950 did not alter in any way the inhibition placed against guardians. The words "or act" relate to personal representatives, but not to guardians. As to guardians the statute remains unchanged and the only prohibition against non-residents is to their *appointment* in Virginia.

The judge of the District Court noted this distinction and that the words "to act" were not included in that portion of the statute relating to guardians, but he was of opinion that the "omission is a mere inadvertence in drafting" and that the section should be construed to impose against non-resident guardians the same ban in all respects as that applied to personal representatives. We do not think that such an interpretation is justified. The language of the statute is plain and is to be taken as written. We do not think it permissible to construe a statute on the basis of a mere surmise as to what the Legislature intended and to assume that it was only by inadvertence that it failed to state something other than what it plain-

ly stated. This is particularly true when there is no confusion or lack of clarity in the wording of the statute and where it could so easily have been worded to provide the meaning given by the District Court had the law-making body so desired.

■ We are of opinion that Sect. 26–59 does not require that a guardian appointed and qualified in another state must, in order to bring suit in Virginia, associate a resident co-guardian as plaintiff. We have not been cited to any other statute of the state, nor have we found any, which forbids a foreign guardian from bringing suit in his own name alone in the Virginia courts. We conclude, therefore, that there is no *statutory* provision forbidding the maintenance of this action.

However, there remains to be determined a question which the District Judge, because of his interpretation of Sect. 26–59, found it unnecessary to consider, namely, whether there is any bar to the action to be found in the non-statutory law as established by the decisions of the Virginia courts. We think this question should be gone into and that for this purpose the case should be remanded to the District Court for its consideration there.

In this connection we find that in the case of Stewart v. Crabbin's Guardian, 6 Munf. 280, (decided in 1819) an action brought in the name of a guardian for injury done to his ward, and in which the plaintiff had obtained a judgment, was reversed on the ground that the action should have been "by the infant by his guardian." On the other hand we find that in Truss v. Old, 6 Rand. 556, (decided in 1828) it was held that it was proper for a guardian to bring suit in his own name for damages done to property of his ward. And in Clendenning v. Conrad, 91 Va. 410, 21 S.E. 818, a guardian appointed and qualified in West Virginia sued in his own name in a Virginia court to compel the payment to him of funds due to his wards and in the hands of a Virginia attorney. In neither of these first two cases does there seem to have

been raised any question of the right of the guardian to proceed in his own name. These cases at least raise some question as to whether there is an established rule in the state as to suits by guardians.

■ We feel, therefore, that this case should be remanded to the District Court in order that it may determine, from a consideration of the cases noted above and any other authority presented to it or discovered by it, whether it is still the law in Virginia that a guardian cannot sue in his own name for injuries to his ward. If the District Judge should reach the conclusion that Virginia practice requires that the action be in the name of the ward, then we suggest that, in the exercise of this discretion, he is at liberty to grant an opportunity for an amendment of the style of the case. This course would have sound support and would be in accord with modern practice. Federal Rules of Civil Procedure, Rules 8(f) and 15(a). And see City of Detroit, Mich. v. Blanchfield, 6 Cir., 13 F.2d 13, 47 A.L.R. 314, in which just such an amendment was approved. See also Hodges v. Kimball, 4 Cir., 91 F. 845, and citations therein.

■ A general guardian is the custodian and protector of both the person and the property of his ward and where, as in this case, the action is for injuries to the ward, it appears to us of little moment whether it be styled in the name of the guardian or in the name of the infant, "by his guardian." There would be no change in the cause of action; the evidence in either case would be precisely the same and any recovery would be paid to the guardian to be administered by him in the interest of his ward. We have found no authority which offers any compelling reason for the distinction drawn in Stewart v. Crabbin's Guardian and that case supplies none. It is true, we believe, that it is the customary and traditional practice in Virginia to sue for injuries to an infant in the infant's name "by his next friend" or, where the infant has a general guardian, "by his guardian." But to hold that any deviation from this form is an error of such

gravity as to infect the proceeding with an incurable invalidity which requires its dismissal is to pay a deference to tradition for which modern practice offers no justification.

The case is remanded for further proceeding in the District Court as indicated herein.

Remanded.